488 So.2d 379 (1986)
Ronald J. LANDRY and Shirley Landry, Plaintiffs-Appellees,
v.
TRAVELERS INSURANCE COMPANY, Defendant-Appellant.
No. 85-525.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1986.
Writ Denied July 1, 1986.
*380 Pugh & Boudreaux, James Robert Shelton and Charles J. Boudreaux, Lafayette, for defendant-appellant.
Stanley P. Babin, Lafayette, for plaintiffs-appellees.
Before DOUCET, LABORDE and BOND,[*] JJ.
DOUCET, Judge.
This appeal presents an issue of coverage by a health policy issued by Travelers Insurance Company for expenses incurred by plaintiffs, Ronald J. and Shirley Landry.
From a judgment of the trial court in favor of the plaintiffs for $3,096.00, Travelers appealed. We affirm.
The trial court handed down well written reasons for judgment. These reasons correctly set forth the facts and properly apply the policy provisions in reaching its conclusion. We adopt these reasons as our own as follows:
"Plaintiffs filed suit under a health insurance policy provided by Travelers Indemnity Company and underwritten by Travelers Insurance Company under which Mrs. Shirley Landry was a beneficiary. Plaintiffs seek judgment for medical benefits not paid by defendant, legal interest, penalties and attorney fees.
The insurance policy provides, in pertinent part:
`Covered medical expenses are reasonable charges (see Definitions) actually incurred for the services and supplies listed below upon the recommendation and *381 approval of the attending physician and required for treatment of you and your Dependent ...
2. Physician's or Surgeon's Services for a surgical procedure and other medical care and treatment ...
A pre-existing condition is any injury, sickness, pregnancy or related medical condition for which medical care and treatment is received by you or your Dependent during the 3 month period ending on the date of coverage. In the event of a pre-existing condition, coverage for that condition will be postponed until 3 consecutive months have elapsed during which no care or treatment has been received. However, even if treatment is continuous, you will be covered with respect to that condition after your insurance has been in force during active employment for 6 months. Your Dependent will be so covered after his insurance has been in force for 12 months.
Charges not covered are those: made for care and treatment of the teeth and gums except on account of accidental injury to the natural teeth while insured and for cutting procedures in the oral cavity ...'
The parties stipulated that Travelers Indemnity Company provided medical insurance to plaintiffs at all times material hereto. The treatment rendered to Mrs. Landry and charges incurred therefor which form the basis of this litigation were not incurred as the result of an "accidental injury to natural teeth while insured". The total amount of the bills that remain at issue is $3,176.00, all of which was incurred by plaintiffs for treatment of Mrs. Landry's temporol mandibular joint problem. The depositions of Doctors Gene O. Dupree, Gordon Mills, Kenneth A. LaFleur, and Charles Olivier were presented to the Court in lieu of their live testimony.
Having reviewed the joint stipulation of the parties, the insurance policy and the medical depositions, the Court finds that the insurance policy does provide coverage in this case. Dr. Kenneth LaFleur, Mrs. Landry's regular dentist, testified that she had no toothache, rather she had pain in the joint and dizziness. He diagnosed a temporal mandibular joint problem and felt that it was not solely a dental problem, it was a problem in the medical field because it involves the muscles and bones in a complicated joint. Dr. LaFleur felt he could not properly treat Mrs. Landry so he referred her to Dr. Gene Dupree, an oral surgeon.
Dr. Dupree examined Mrs. Landry and found that she had a tender muscle on the left side and muscle spasms in connection with the joint. She also had an intermittent click or noise in the left joint, as well as temporol headaches on the left side. Dr. Dupree found that Mrs. Landry had an orthopedic problem, that is a joint problem involving the bony structure as opposed to a tooth or gum problem. He stated that while the teeth and bone or joints are separated physically, they are not separated clinically or practically because of the close association between the occlusion, or bite, and joint problems. Dr. Dupree stated that the cause of her condition was that she had a dislocated disc in the left temporol mandibular joint. This disc had been displaced and was involved with the clicking and popping noise in the joint. There were also ligament problems and inflammatory processes involved in the dislocated disc situation that were very consistent with his clinical findings and with Mrs. Landry's history.
Dr. Dupree preferred to avoid surgery if possible, so he and Dr. LaFleur mutually agreed that Mrs. Landry should undergo a thorough dental evaluation to determine if there were any malocclusions that would have to be handled by a dentist familiar with the field, such as grinding of the teeth or crown and bridge work to remedy any possible malocclusion. Therefore, the doctors referred Mrs. Landry to Dr. Gordon Mills, a dentist familiar with such a problem.
Dr. Mills testified that when he first saw Mrs. Landry, she had ringing in the ears, headaches, soreness of muscles, and no toothache or gum problems. He found that *382 she had a bilateral temporol mandibular joint dysfunction. He stated that her symptoms were in relation to the existing malposition of the jaws to each other, and that this was an orthopedic problem in that it was necessary to alleviate the muscle spasms so that the lower jaw may properly relocate to the upper jaw. He further explained that the problem is a combination of the joint, the muscles and the teeth, and if they are not in harmony, she would be in pain.
Dr. Mills treated Mrs. Landry by equilibration (grinding down the surface of some teeth) and performing crown and bridge work. He testified that all the dental work he performed was done to alleviate her problems and pain associated with the temporol mandibular joint dysfunction.
In view of the facts of this case, the Court notes the ambiguity of the policy exclusionary clause which states that the charges not covered are those made for care and treatment of the teeth and gums. It is well established that any exclusion from coverage must be made clear and unmistakeable. If more than one interpretation of an exclusionary clause is reasonable the interpretation affording coverage to the insured will be adopted. See Stewart v. Louisiana Farm Bur. Mut. Ins. Co., 420 So.2d 1217 (La.App. 3rd Cir.1982); La. C.C. Art. 1958.
Dr. Mills testified that Mrs. Landry had an orthopedic problem and all the dental work he performed was done to alleviate her problems and pain associated with the joint dysfunction. Doctors LaFleur and Dupree also testified that Mrs. Landry had an "orthopedic and medical problem" rather than a "dental problem." In addition, the Court notes the testimony of Dr. Dupree that the conservative treatment by Dr. Mills was preferable to treatment with radical oral surgery. In view of the above, the Court finds that the treatment by Dr. Mills was done upon the recommendation and approval of the attending physician, Dr. Dupree, and the health insurance policy does provide coverage for all the treatment Mrs. Landry received from Doctors Mills, Dupree and LaFleur, except as noted hereafter.
The parties stipulated that the policy became effective November 21, 1981. The Court finds that Mrs. Landry's joint problem was a pre-existing condition because she received treatment for it from Dr. Dupree on August 31, 1981, and from Dr. LaFleur on October 22 and November 20, 1981, within three months prior to the effective date of the policy. Thereafter, six consecutive months elapsed during which she received no care or treatment of her condition until she saw Dr. Dupree on May 31, 1982. Therefore, defendant is not responsible for the payment of any medical bills incurred prior to November 21, 1981, but is responsible for payment of all bills incurred on or after May 31, 1982 for treatment of Mrs. Landry's problem.
As the Court stated in Stewart v. Louisiana Farm Bur. Mut. Ins. Co., supra:
`Where serious issues are raised with regard to plaintiff's right to recovery, the insurer's refusal to pay is not arbitrary, capricious or without probable cause. See Patin v. State Farm Insurance Company, 395 So.2d 466 (La.App. 3rd Cir.1981). Where an insurer's interpretation of its policy is reasonable and not contrary to any existing jurisprudence, the denial of a claim is not arbitrary so as to require the imposition of penalties and the insurer has a right to a judicial determination of the issues. While a court may disagree with the interpretation the insurer places upon its policy, its actions in refusing to pay should not necessarily subject it to the penalty provisions of the statute. See Graham v. Equity National Life Insurance Company, 373 So.2d 988 (La.App. 3rd Cir.1979), writ denied 376 So.2d 319, 320 (La.1979).' The Court finds that defendant acted in good faith in refusing to pay plaintiff's claim, based on a reasonable interpretation of its policy provisions, and was not arbitrary or capricious. *383 Therefore, the statutory penalties and attorney fees are denied.
In view of the above, defendant is responsible for payment of the bills of Doctors Mills and Dupree in the amounts of $3,081.00 and $15.00, respectively, for a total of $3,096.00, with legal interest thereon from date of judicial demand until paid, and for all costs of these proceedings..."
For these reasons the judgment of the trial court is affirmed. Travelers Insurance Company, appellant, shall pay the costs of this appeal.
AFFIRMED.
NOTES
[*] Hon. W. Ellis Bond, Judge of the Fourteenth Judicial District Court, participated in this decision by appointment of the Louisiana Supreme Court.